IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Chrystal N. Williams, | ) | CASE NO. 1:12CV00358 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| Commissioner of Social Security[1], | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Chrystal N. Williams ("Williams" or "Plaintiff") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for social security disability benefits.  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

As set forth below, the ALJ, in his assessment of Williams' Residual Functional Capacity ("RFC") and in his hypothetical question to the Vocational Expert ("VE"), failed to account for all the limitations that he found Williams to have.  Accordingly, the undersigned recommends that the decision of the Commissioner be **REVERSED and REMANDED** for further proceedings consistent with this Report and Recommendation.

## I.  Procedural History

Williams filed applications for Disability Insurance Benefits and Supplemental Security Income on or about September 24, 2007. Tr. 76-78, 165-172, 173-178.[2]  She alleged a disability

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is hereby substituted for Michael J. Astrue as the Defendant in this case.

onset date of January 1, 2006.  Tr. 165, 173.  Williams alleged disability based on asthma, affective disorders, bipolar manic depressive, and abnormal vaginal bleeding.  Tr. 76-78, 79, 84, 88, 95, 215-216.   After initial denials by the state agency and denials upon reconsideration (Tr. 76-78, 79-82, 84-87, 88-90, 91-94, 95-97 ), Williams requested a hearing (Tr. 98-99), and an administrative hearing was held before Administrative Law Judge Dennis LeBlanc ("ALJ") on April 29, 2011.[3]  Tr. 24-69.

In his June 8, 2011, decision, the ALJ determined that Williams had not been under a disability since January 1, 2006, through the date of the ALJ's decision.  Tr. 17.  Williams requested review of the ALJ's decision by the Appeals Council.  Tr. 160-161.  On December 20, 2011, the Appeals Council denied Williams' request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-5.

## II. Evidence

### A.    Personal and Vocational Evidence

Williams was born on June 2, 1981.  Tr. 165, 173.  She was 24 years old as of her alleged onset date.  Tr. 32, 165, 173.  Plaintiff has four minor children.  Tr. 53-54.  At the time of the hearing, her children were 13, 10, 10 and 4 years old.[4]  Tr. 53-54.  She resided with her children at a home across the street from her father.  Tr. 42.  Her father provides assistance with the children.  Tr. 42.

---

[2] Citations to the transcript are to the supplemental transcript filed on July 6, 2012.  Doc. 15.

[3] Plaintiff was unable to attend an earlier scheduled March 9, 2011, hearing because of car problems and, upon Plaintiff's counsel's request, the hearing was rescheduled.  Tr. 70-75.

[4] Williams reported to her mental health provider that she had lost a son when he was 6 months old.  Tr. 318.

Williams completed the ninth grade.  Tr. 32.  Her work history includes work as a bar maid/cook (1997-2001) and as a nurse's assistant in nursing homes (2003-2005).[5]  Tr. 33, 216-218, 409.  Also, following her alleged disability onset date, Williams worked as a school bus aide for special education children from August 2006 through February 2007.  Tr. 59-61, 208.  Additionally, for a few months in 2007, Williams worked as a sales representative selling cleaning systems.  Tr. 46-52, 208.   Williams reported that she stopped her sales job for three reasons: an injury to her foot; her lungs started bothering her more as the weather started to get warmer; and her bleeding issues.  Tr. 48, 409.

**B.     Medical Evidence**

    **1.     Medical evidence relating to Williams' physical impairments**

        **a.   Medical opinions - State Agency reviewing physicians**

On February 26, 2008, Dr. Leslie Green, M.D., opined that Williams could perform medium work except she would need to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.  Tr. 433-440.  On August 22, 2008, Dr. Anton Freihofner, M.D., affirmed Dr. Green's February 26, 2008, assessment. Tr. 521.

        **b.   Medical records**

Plaintiff has a history of various health issues, including asthma (Tr. 487-488, 491, 524-525, 549, 671, 675), mediastinal adenopathy (Tr. 487, 516, 675), and histoplasmosis, an infection resulting from inhalation of spores.[6]  (Tr. 462, 487, 524, 674).  Records show that Williams was a smoker and continued to smoke as recently as 2010.  Tr. 687, 702, 807.

---

[5]On March 18, 2006, Plaintiff reported to her mental health provider that she was on maternity leave from her "medical field" job.  Tr. 318.

[6] *See* Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at 875.

She suffered from pelvic pain and abnormal vaginal bleeding.  Tr. 332, 367.  With medication, Williams' bleeding stopped.  Tr. 367-368.  However, in November 2007, Williams underwent a hysterectomy.  Tr. 367.   Following her hysterectomy, in February 2008, Plaintiff continued to experience abdominal/pelvic pain.  Tr. 500-501, 668-669.  She was admitted to the emergency room and diagnosed with possible right ovarian vein thrombosis/septic thrombophlebitis of the right ovarian vein.  Tr. 500-501, 669.  She was treated with antibiotics, heparin, and Coumadin and she was ordered to follow up with an office visit.  Tr. 669.  A follow up chest exam showed "no central or segmental pulmonary embolism."  Tr. 666.  She continued follow up treatment and, in May 2008, Dr. Sidloski, D.O., indicated that Williams seemed to be doing well.  Tr. 500.  A December 14, 2008, a CT scan showed "[n]o definite spiral CT evidence of pulmonary thromboembolism."  Tr. 610.

In July 2007, Williams sprained her left ankle.  Examinations ultimately revealed no fractures or dislocations with improvement in the degree of swelling in her ankle.  Tr. 443-455.

On November 19, 2009, a lumbar spine MRI was performed due to complaints of low back pain.  Tr. 684-685.  The MRI showed minimal lower lumbar faecet arthrosis with a mild bulging disc at L5-S1 centrally and no sign of disc protrusion, central canal stenosis or neural foraminal narrowing.  Tr. 685.  During late 2009 and through at least November 30, 2010, Williams was treated for back pain at the Comprehensive Pain Care Center.  Tr. 687-711.

Williams was diagnosed as being obese with recommendations for weight loss and exercise.  Tr. 672, 722.

As noted by Plaintiff, Plaintiff was admitted to the hospital on eight different occasions during 2008 and 2009.  Doc. 16, p. 9.  The length of the admissions ranged from 1 to 7 days.  Doc. 16, p. 9.  The hospitalizations were for various health issues, including reports of pelvic and

abdominal pain (Tr. 722, 735, 805, 946), fever (Tr. 549, 805, 946), nausea and vomiting (Tr. 489, 735, 936), and chest pain, shortness of breath, evaluation of respiratory status, exacerbation of asthma (Tr. 466, 489, 492, 528, 545, 549, 803, 936).

### 2. Medical evidence relating to Williams' mental impairments

#### a. Medical opinions

##### i. Treating psychiatrist, Dr. Kanchera Srinivas Rao, M.D.

Dr. Rao first treated Williams on July 25, 2008, and he treated Williams through at least April 20, 2011. Tr. 964. On April 20, 2011, Dr. Rao completed a "Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment" ("Medical Source Statement"). Tr. 963-964. Dr. Rao diagnosed Williams with mood disorder, not otherwise specified. Tr. 964.

In the Medical Source Statement, Dr. Rao rated Plaintiff's mental functioning in seven areas.[7] Tr. 963-964. Dr. Rao opined that Williams had less than moderate limitations in her ability to remember, understand, and follow simple directions. Tr. 963. He opined that Williams had moderate limitations in her ability to maintain attention and concentration for two-hour periods of time and in her ability to perform work activities at a reasonable pace. Tr. 963. He opined that Williams had moderate/marked limitations in her ability to withstand the stresses and pressures of routine simple unskilled work. Tr. 964. Dr. Rao opined that Williams had marked limitations in the remaining three areas: ability to keep a regular work schedule and maintain punctual attendance; ability to interact appropriately with others (e.g., public, supervisors, co-workers); and ability to make judgments that are commensurate with the functions of unskilled work, i.e., make simple work-related decisions. Tr. 963-964.

---

[7] The rating options included "less than moderate," "moderate," "marked," and "extreme." Tr. 963-964.

Dr. Rao commented that "in view of the above [assessment] as well as her poorly controlled respiratory problems patient is unlikely to work in any job on a sustained basis in the near future."  Tr. 964.

### ii.   State consultative psychologist, Dr. Ronald G. Smith, Ph.D.

On January 14, 2008, at the request of the Bureau of Disability Determination, Dr. Smith conducted a psychological consultative examination.  Tr. 408-414.  Dr. Smith suggested diagnoses of dysthymic disorder, early onset; impulse control disorder, NOS; and personality disorder, NOS.  Tr. 413.  Dr. Smith offered the following opinions concerning Williams' work-related mental abilities.  Tr. 414.

Dr. Smith opined that, based on her past work history, Williams' ability to work with supervisors or the general public would not be impaired.  Tr. 414.  However, he also opined that her ability to work with peers or fellow workers would be mildly impaired.  Tr. 414.

Dr. Smith opined that Williams' ability to understand, remember and follow instructions would not be impaired. Tr. 414.

Dr. Smith opined that Williams' ability to maintain attention and concentration would be mildly impaired at times when she becomes frustrated and her performance will suffer and deteriorate with increased worry and depressive feelings.  Tr. 414.

Dr. Smith opined that Williams' ability to withstand the stress and pressure of day-to-day work activity would be moderately impaired.  Tr. 414.

### iii.   State agency reviewing physicians

#### 1.   David Demuth, M.D.

On January 1, 2008, Dr. Demuth completed a Mental Residual Functional Capacity ("Mental RFC") (Tr. 415-418) and a Psychiatric Review Technique (Tr. 419-432).

In the Mental RFC, Dr. Demuth rated Williams' mental functioning in 20 categories.  Tr. 415-416.  In all but two of the 20 categories, Dr. Demuth found that Williams had no limitations or that her abilities were not significantly limited.  Tr. 415-416.  However, in two categories, Dr. Demuth opined that Williams was moderately limited.  Tr. 416.  He found that Williams' "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" was moderately limited.  Tr. 416.  He also found that Williams' "ability to interact appropriately with the general public" was moderately limited.  Tr. 416.

In the narrative section of the functional capacity assessment, Dr. Demuth indicated that Williams' allegations were not fully credible. Tr. 417.  Concerning Williams' sustained concentration and persistence, Dr. Demuth opined that Williams can carry out multi-step tasks; has a reduced stress tolerance; can carry out tasks in situations where duties are relatively static and changes can be explained; and can do tasks that do not require independent prioritization or more than daily planning.  Tr. 417.  He also indicated that she is moderately limited in her ability to interact with the public, works best in small groups, and has mild problems adapting.  Tr. 417.

In the Psychiatric Review Technique, Dr. Demuth opined that Williams had mild limitations in her activities of daily living.  Tr. 429.  He also opined that Williams had moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace.  Tr. 429.  He indicated that Williams has had no episodes of decompensation.  Tr. 429.

### 2.  Cindy Matyi, Ph.D.

On August 23, 2008, Dr. Matyi reviewed and affirmed Dr. Demuth's Mental RFC and Psychiatric Review Technique but with two exceptions noted.  Tr. 522.  Dr. Matyi stated that she found Williams' allegations to be consistent with the evidence and credible.  Tr. 522.  She also

found that Williams' ability to understand, remember and carry out detailed instructions; her ability to maintain attention and concentration for extended periods; and her ability to adapt to change were moderately, rather than not significantly, limited.  Tr. 522 (referencing blocks 3, 5, 6 and 17 of Dr. Demuth's Mental RFC – Tr. 415-416).  Notwithstanding the noted exceptions, Dr. Matyi opined that Williams retained significant residual functional capacity as described in Dr. Demuth's narrative.  Tr. 522.

### b.  Medical records

In addition to receiving psychiatric treatment from Dr. Rao in 2008 through 2011, in early March 2006, Williams sought treatment at EMH-emergency room for mental health related issues.  Tr. 318.  As part of her treatment at the hospital, a referral was made to the Nord Mental Health Center ("Nord") and Nord conducted an Assessment.  Tr. 318-321.  During that Assessment, Williams reported that she went to the emergency room to see if she could get put on medication.  Tr. 318.  She reported an increase in symptoms due to being pregnant with her fourth child and that she was upset that she was having another girl.  Tr. 318.  Williams reported no current suicidal or homicidal intentions.  Tr. 319.  Williams was cooperative, trusting and secure and her mood was appropriate and intact. Tr. 320.  After Nord's consultation with Williams and with the emergency room staff, Nord approved Williams for discharge home.  Tr. 320.  Williams was diagnosed with adjustment disorder without depressed mood.  Tr. 321.    She refused further Nord services at that time.  Tr. 321.

Later that month, on March 28, 2006, Williams sought further treatment for mental health issues.  Tr. 389.  Dr. Douglas J. Lee, M.D., conducted an assessment of Plaintiff.[8]  Tr. 389-391.  Williams was seeking medication to assist her with coping through her pregnancy.  Tr. 390.

---

[8] Dr. Lee did not complete the Bureau of Disability and Determination's Report.  Tr. 386-388.  However, Dr. Lee's medical treatment records were provided.  Tr. 389-400.

Williams denied being suicidal or having hallucinations.  Tr. 390.  Dr. Lee diagnosed Plaintiff

with adjustment disorder and mood disorder, not otherwise specified.  Tr. 391.  He prescribed

Zoloft.  Tr. 391.  At an April 11, 2006, follow-up appointment, Williams stated that the Zoloft

was helping and Dr. Lee noted that Williams was relaxed and calm and more happy and smiling.

Tr. 392.  Also during that appointment, Dr. Lee indicated that he would see Williams after her

baby was born.  Tr. 392.  On July 11, 2006, Williams called Dr. Lee to advise him that her baby

had been born and, on July 20, 2006, Williams saw Dr. Lee.  Tr. 392-393.  He reported that her

mood was happy and cheerful.  Tr. 393.  Records reflect that Williams continued seeing Dr. Lee

through October 9, 2007.  Tr. 394-400.  She continued to take Zoloft, with increases in the

dosage, and Dr. Lee also prescribed Ativan and Klonopin.  Tr. 394-400.

## C.    Testimonial Evidence

### 1.    Williams' Testimony

Williams was represented by counsel and testified at the April 29, 2011, hearing

regarding her work history, medical issues, and daily living activities. Tr. 31-64.

### 2.    Vocational Expert's Testimony

Vocational Expert Nancy Borgenson ("VE") testified at the hearing.  Tr. 64-68.  The

ALJ asked the VE to assume a hypothetical individual, age 29, with a limited education who is

able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk

for 6 hours in an 8 hour day; can sit for about 6 hours in an 8 hour day; can occasionally climb

but no ladders, ropes, or scaffolds; can occasionally stoop; should avoid work environments of

extreme heat; should avoid work environments with smoke, fumes, dust and gases; can

understand, remember, and carry out non-detailed two to three step instructions in a routine work

environment with few daily changes; can interact with co-workers in a superficial nature; can

interact with the general public no more than occasionally.  Tr. 65-66.  The ALJ then asked the

VE whether such a hypothetical individual would be able to perform any unskilled occupations

existing in the national, regional or local economy.  Tr. 66.  In response, the VE indicated that

the following jobs would be available to such an individual: mail clerk (not in the post office)

and bench assembler.[9]  Tr. 66-67.

Plaintiff's counsel then asked the VE questions regarding the amount of absenteeism that

would be acceptable for the positions she mentioned.  Tr. 67.  The VE indicated that, on average,

an employer would tolerate about 6 to 8 times per year or about less than 1 time per month.  Tr.

67.  The VE noted that her testimony reflected the average and some employers would tolerate

more and some would tolerate less.  Tr. 67.  The VE also testified that, if a worker consistently

missed work for only part of the day, it could impact the ability of such a worker to sustain full-

time work.  Tr. 67-68.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the

existence of a disability.  "Disability" is defined as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy . . . .

42 U.S.C. § 423(d)(2).

---

[9] The VE stated, regarding the mail clerk position, that there were approximately 1,450 jobs available in northeast
Ohio; 7,000 in Ohio; and 139,000 nationally and, regarding the bench assembler job, there were approximately
5,000 jobs available in northeast Ohio; 35,000 in Ohio; and 289,000 nationally.  Tr. 66-67.

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.    If the claimant is doing substantial gainful activity, he is not disabled.

2.    If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.    If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.    If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.    If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also* *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In his June 8, 2011, decision, the ALJ determined that Williams had not been under a disability since January 1, 2006, through the date of the ALJ's decision.  Tr. 17.  The ALJ reviewed the record, heard testimony and found that:

1.  Plaintiff met the insured status requirements through September 30, 2007. Tr. 11.

2.  Plaintiff had not engaged in substantial gainful activity since January 1, 2006, the alleged onset date. Tr. 11

3.  Plaintiff had the following severe impairments: asthma, degenerative disc disease of the lumbar spine, vein thrombosis, obesity and major depressive disorder.  Tr. 11.

4.  Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing.[10]

5.  Plaintiff had the RFC to perform light work except she can occasionally climb, but no ladders, ropes or scaffolds.  She can occasionally stoop. She needs to avoid extreme heat. She is to avoid work environments with smoke, fumes, dusts, or gases.  She can understand, remember, and carryout non-detailed two to three step instructions in a routine work environment with few daily changes.  She can engage in superficial interaction with co-workers and occasional interaction with the general public. Tr. 13-16.

6.  Plaintiff had no past relevant work.  Tr. 16.

7.  Plaintiff was born on June 2, 1981, and was 24 years old, defined as a younger individual age 18-49, on the alleged disability onset date.  Tr. 16.

8.  Plaintiff has a limited education and is able to communicate in English. Tr. 16.

9.  Transferability of job skills was not an issue because Plaintiff has no past relevant work.  Tr. 16.

10. Considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform: mail clerk and bench assembler.  Tr. 16-17.

Based on the foregoing, the ALJ determined that Williams had not been under a disability from January 1, 2006, through the date of the ALJ's decision.  Tr. 17.

---

[10] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

## V. Parties' Arguments

### A.      Plaintiff's Arguments

Williams presents two arguments for the Court's review. Doc. 16, pp. 9-15; Doc. 18, pp. 2-9.  First, Plaintiff argues that, even though the ALJ found that Williams had moderate limitations in maintaining concentration, persistence or pace, the ALJ's RFC and hypothetical question to the VE did not account for those limitations.  Doc. 16, pp. 9-11; Doc. 18, pp. 7-9.  In support of her first argument, Plaintiff relies, in part, on the Sixth Circuit's decision in *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

Second, in reliance upon SSR No. 96-8p, Williams argues that the ALJ failed to adequately evaluate evidence of Williams' hospitalizations in 2008 and 2009 which, Williams alleges, proves that she would be unable to perform sustained work and therefore disabled.[11]

### B.      Defendant's Arguments

In response to Plaintiff's first argument, the Commissioner argues that the ALJ's RFC reasonably accounted for Plaintiff's mental impairments.  Doc. 17, pp. 9-13.  The Commissioner asserts that *Ealy* is distinguishable because, notwithstanding the moderate limitations noted by Dr. Demuth and Dr. Matyi, they both opined that Plaintiff could perform multi-step tasks in environments where the duties are relatively static and changes can be explained and the ALJ accounted for these limitations in the RFC and VE hypothetical.  Doc. 17, p. 10.  The Commissioner also asserts that other evidence, including consulting physician Dr. Smith's opinions, Plaintiff's daily activities and the fact that, even after her alleged onset date, Williams worked jobs and left those jobs due to physical, not mental impairments, supports the ALJ's RFC assessment.  Doc. 17, pp. 10-13.

---

[11] SSR No. 96-8p relates to "assessing residual functional capacity in initial claims."  Social Security Ruling No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

In response to Plaintiff's second argument, the Commissioner argues that Plaintiff could perform work on a sustained basis and Plaintiff cannot demonstrate disability by relying simply upon the number of medical visits.  Doc. 17, p. 13.  Further, the Commissioner argues that Plaintiff has misstated the significance of the hospital visits, i.e., she voluntarily went to the hospital rather than to a primary care physician.  Doc. 17, p. 13. The Commissioner also argues that the results of the hospital visits demonstrate that Williams did not have a disabling condition.  Doc. 17, pp. 13-14.  The Commissioner also indicates that the ALJ discussed a number of Williams' hospitalizations.  Doc. 17, pp. 13-14 (citing Tr. 15).

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.      The ALJ's Step Five determination is not supported by substantial evidence.**

Williams argues that the ALJ's finding under Step Five is not supported by substantial evidence because, even though the ALJ determined that Williams had moderate limitations in maintaining concentration, persistence or pace, the ALJ's hypothetical to the VE and the ALJ's RFC did not accurately reflect those limitations.  Doc. 16, p. 9 (citing Tr. 12).

Williams is correct that, when conducting his Step Three analysis, the ALJ determined that Williams had moderate difficulties in her ability to maintain concentration, persistence and pace.  Tr. 12.  The ALJ did not change this finding when he discussed and established Williams' RFC.  Tr. 13-16.  In fact, later, in his RFC analysis section, when weighing the various opinions, the ALJ indicated that Plaintiff's "acknowledged activities are more consistent with moderate limitations in functioning."  Tr. 16.  This later finding is consistent with his earlier findings at Step Three.

Also, when discussing the medical opinions and assigning weight to those opinions, the ALJ gave considerable weight to various state agency physicians' medical assessments, including assessments by Dr. Demuth (Tr. 415-432 (Exhibit 8F) and Dr. Matyi (Tr. 522- Exhibit 18F).[12]  Tr. 16.  As noted *supra*, Dr. Demuth indicated that Williams had moderate limitations in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  Tr. 416.  Additionally, in the Psychiatric Review Technique, Dr. Demuth opined that Williams had moderate limitations in maintaining concentration, persistence, or pace.  Tr. 429.  Moreover, Dr. Matyi, in reviewing Dr. Demuth's assessment, affirmed his opinion with exceptions including an exception regarding Dr. Demuth's finding regarding Williams' ability to maintain attention and concentration for extended periods.  Tr. 522.  Dr. Matyi opined that Williams' ability to maintain attention and concentration *for extended periods* was moderately limited whereas Dr. Demuth opined that Williams was not

---

[12] The ALJ also gave significant weight to state consultant physician Dr. Smith's assessment (Tr. 407-414 – Exhibit 7F) and less than controlling weight to treating psychiatrist Dr. Rao's opinions (Tr. 963-964 – Exhibit 34F).  As noted by the Commissioner, the Plaintiff has not asserted that the ALJ erred in the weight assigned to the opinion of her treating psychiatrist.  Doc. 17, p. 15, FN 8.

significantly limited in her ability to maintain attention and concentration for extended periods. Tr. 522, 415 (no. 6).

To satisfy her burden at Step Five, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question." *Id.* (citation omitted). However, if an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Id.; Ealy*, 594 F.3d at 516-17; *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do").

The Sixth Circuit's decision in *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010) is applicable here. An omission of speed and pace-based restrictions from a hypothetical question is reversible error and restrictions to "routine," "simple," "low stress" work do not sufficiently incorporate a claimant's moderate limitations in concentration, persistence and pace. *Ealy*, 594 F.3d at 516–17. In *Ealy*, the ALJ found that the claimant had moderate difficulties in concentration, persistence or pace but the ALJ did not ask the vocational expert a hypothetical containing a fair summary of those restrictions. *Id.* at 516. Instead, the ALJ's hypothetical only limited the claimant to simple, repetitive tasks and instructions. *Id.* The Sixth Circuit concluded that the hypothetical did not adequately describe the claimant's limitations and, as a result, the vocational expert's testimony did not constitute substantial evidence in support of the ALJ's Step Five determination. *Id.; See also Raymond v. Comm'r of Soc. Sec.*, 2012 WL

2872152, * 3-4 (N.D. Ohio June 4, 2012) (following *Ealy* and indicating that "speed or pace restrictions, or durational restrictions (as in *Ealy)* will necessitate greater, specific limitations in the RFC and hypothetical"), *report and recommendation adopted*, 2012 WL 2872462 (N.D. Ohio July 12, 2012); *Harris v. Comm'r of Soc. Sec.*, 2012 WL 3780401, * 17 (N.D. Ohio Jul. 30, 2012 (following *Ealy* and indicating that "[a]dding the further limitation of one- or two-step tasks does not adequately accommodate for moderate pace or concentration difficulties"), *report and recommendation adopted*, 2012 WL 3780395 (N.D. Ohio Aug. 31, 2012).

 Here, notwithstanding the ALJ's own determination that Plaintiff had moderate limitations in concentration, persistence or pace and his reliance upon Dr. Demuth and Dr. Matyi's opinions which also reflect moderate limitations in concentration, persistence or pace, including Dr. Matyi's opinion that Williams' ability to maintain attention/concentration for extended periods was moderately limited, the ALJ's RFC only contains restrictions to non-detailed two to three step instructions in a routine environment with few daily changes.[13] Tr. 13. These restrictions are not an adequate substitute because they do not account for any speed or pace-based limitations.  Further, since the hypothetical to the VE, upon which the ALJ relied, does not adequately describe Williams' mental limitations, the VE's testimony that Williams could work as a mail clerk or bench assembler (Tr. 66-67) does not serve as substantial evidence in support of the ALJ's determination that Williams could perform such work.

 Relying on *Jackson v. Comm'r of Soc. Sec.*, 2011 WL 4943966, *4 (N.D. Ohio Oct. 18, 2011, the Commissioner asserts that *Ealy* is a limited, fact-based ruling.  Doc. 17, pp. 10.  The Commissioner then attempts to distinguish *Ealy* by citing the narrative section of Dr. Demuth's opinion concerning Williams' sustained concentration and persistence, which indicates that Williams can carry out multi-step tasks; has a reduced stress tolerance; can carry out tasks in

---

[13] The RFC contains other limitations but those limitations are not pertinent to Plaintiff's first argument. Tr. 13.

situations where duties are relatively static and changes can be explained; and can do tasks that do not require independent prioritization or more than daily planning.  Tr. 417.  The Commissioner  contends that these are different limitations than those involved in the medical opinion in *Ealy*.[14]  Doc. 17, pp. 9-10.

Here, Dr. Matyi's opinion includes a durational restriction, i.e., that Plaintiff cannot maintain attention/concentration for *extended periods*, and the ALJ provided that opinion considerable weight.  Tr. 16, 522 (emphasis supplied).   Further, Dr. Demuth opined that Williams had moderate limitations in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a *consistent pace* without an unreasonable number and length of rest periods." Tr. 416 (emphasis supplied).  The ALJ also provided considerable weight to Dr. Demuth's opinion.  Tr. 16.   Further, although the Commissioner points to the narrative section of Dr. Demuth's Mental RFC to argue that the RFC is supported by substantial evidence, the ALJ's decision does not include an analysis or explanation for why he omitted speed or pace limitations from the RFC.   Without a more detailed analysis by the ALJ, the undersigned cannot assume that the ALJ relied only upon the narrative section of Dr. Demuth's opinion in formulating his RFC.   Accordingly, because of the durational and and/or pace limitations that are included in at least two of the opinions that were given considerable weight by the ALJ, and without more detail by the ALJ regarding his analysis of those opinions, the undersigned finds that, even if *Ealy* was limited to the extent argued by the Commissioner, Plaintiff's reliance upon *Ealy* and the rationale contained therein is appropriate.

Accordingly, because the ALJ found moderate limitations in concentration, persistence or pace, but did not include a speed, pace or other durational limitation and did not explain why he

---

[14] In *Ealy*, the relevant medical opinion limited the claimant's "ability to sustain attention to complete simple repetitive tasks to '[two- hour] segments over an eight-hour day where speed was not critical.'"  *Ealy*, 594 F.3d at 516.

18

chose not to include such a limitation in the RFC and hypothetical question to the VE, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.[15]  *See Raymond,* 2012 WL 2872152, * 3-4 (following *Ealy*  and indicating that "speed or pace restrictions, or durational restrictions (as in *Ealy)* will necessitate greater, specific limitations in the RFC and hypothetical"); *Harris*, 2012 WL 3780401, * 17 (following *Ealy* and indicating that "[a]dding the further limitation of one- or two-step tasks does not adequately accommodate for moderate pace or concentration difficulties"); *see also Renn v. Comm'r of Soc. Sec.,* 2010 WL 3365944, at *6 (S.D. Ohio Aug. 24, 2010) (holding that, pursuant to *Ealy,* an RFC limiting the plaintiff to simple, routine repetitive tasks, occasional interaction with public, and only routine changes in work setting, did not properly account for the plaintiff's moderate deficits in memory, attention, and concentration).

## B.    The ALJ did not err in his consideration of Plaintiff's treatment history, including her hospitalizations.

Plaintiff's second argument, i.e., that the ALJ did not properly consider the Plaintiff's treatment history and thus failed to properly adhere to SSR No. 96-8p when assessing Plaintiff's RFC, is without merit.

As indicated by Plaintiff, SSR No. 96-8p provides that "[t]he RFC assessment must be based on <u>all</u> relevant evidence in the case record, such as: . . . The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication))."  SSR No. 96-8p, * 13-14. Contrary to Plaintiff's argument, the ALJ's decision makes clear that the ALJ did consider the

---

[15] The Commissioner's attempt to show that "other evidence" supports the ALJ's RFC assessment (Doc. 17, pp. 10-13) is insufficient to overcome the fact that, because the ALJ did not adequately explain his RFC, the undersigned is unable to conduct a meaningful review to determine whether the RFC is supported by substantial evidence.

effects of Plaintiff's treatment, including hospitalizations, when assessing Plaintiff's RFC.  Tr. 14, Tr. 15.  Following his review of Williams' impairments and treatment history, including the effects of and her response to treatment, the ALJ determined that, while Williams' "impairments combined may have stopped her from working for a while [they] . . . do not account for why she did not return to work or remains not working."  Tr. 14-15.

Moreover, while Plaintiff suggests that, based solely on the number of days that she was hospitalized, the ALJ was required to conclude that she was unable to perform sustained work and therefore is disabled,[16] the Plaintiff fails to provide authority for such a bright line rule.

Since Plaintiff has failed to demonstrate that the ALJ did not consider the effects of Plaintiff's treatment and has failed to convince the undersigned that Plaintiff has established that she is disabled based solely on the number of days she spent in the hospital, the undersigned concludes that Williams' second argument is without merit.

### VII. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the decision of the Commissioner be **REVERSED and REMANDED** for proceedings consistent with this Report and Recommendation.[17]

Dated:  March 19, 2013

_Kathleen B. Burke_
_____
Kathleen B. Burke
United States Magistrate Judge

---

[16] Plaintiff argues that "[t]he dates of medical records alone prove that Williams was disabled."  Doc. 16, p. 15.

[17] The recommendation to remand is not a determination that Williams is disabled.

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).